## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | |
|---|---|
| JOÃO ALMEIDA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Civil Action No. 1:19-cv-1105 (CMH/TCB) |
| | ) |
| TABELAFIPEBRASIL.COM, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## REPORT AND RECOMMENDATION

THIS MATTER is before the undersigned on Plaintiff João Almeida's ("Plaintiff")

Motion for Default Judgment against Defendant TabelaFipeBrasil.com ("Defendant" or

"Defendant Domain Name") (Dkt. 24).[1] For the reasons articulated below, the undersigned U.S.

Magistrate Judge recommends that the Court grant Plaintiff's motion.

### I. BACKGROUND

#### A.     Procedural Posture

Plaintiff filed this lawsuit seeking, among other things, the transfer of Defendant Domain

Name to his possession after an unknown person transferred control of the domain name away

from Plaintiff without his authorization. (*See generally* Compl.; Mem. Supp. at 5.) Plaintiff filed

a Verified Complaint on August 22, 2019, bringing an (1) *in rem* claim against Defendant

Domain Name under the Anti-Cybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. §

1125(d); (2) *in rem* quiet title claim against Defendant Domain Name; (3) *in personam* copyright

---

[1] The relevant filings before the undersigned include Plaintiff's Verified Complaint (Dkt. 1) ("Compl."); Plaintiff's Motion for Default Judgment (Dkt. 24) ("Mot. Default J."); Memorandum in Support of Plaintiff's Motion for Default Judgment (Dkt. 25) ("Mem. Supp."); and all attachments and exhibits submitted with those filings.

1

infringement claim against John Doe pursuant to the Copyright Act, 17 U.S.C. § 101, *et seq.*; (4) *in personam* claim against John Doe pursuant to the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (5) *in personam* claim against John Doe pursuant to the Electronic Communications Privacy Act, 18 U.S.C. §§ 2701, 2707; and (6) *in personam* conversion claim against John Doe. (*See* Compl. ¶¶ 2, 50-83.)

After Plaintiff's efforts to identify John Doe failed, Plaintiff's counsel sent a letter to the then-registrar of Defendant Domain Name—NameCheap Inc.—requesting the registrant's contact information. (Dkt. 17-1 ¶ 6, Attach. 1.) NameCheap Inc. did not respond to the request. (*See id.*; Mem. Supp. at 5-6.) Plaintiff's counsel then sent a letter and a copy of the Verified Complaint to the then-registrant of Defendant Domain Name using the e-mail and postal addresses on file with the then-registrar. (Dkt. 17-1 ¶ 9, Attach. 2; Mem. Supp. at 6.) The letter notified the recipient of this lawsuit and relayed Plaintiff's intent to proceed *in rem* against Defendant Domain Name. (Dkt. 17-1 ¶ 9, Attach. 2; Mem. Supp. at 6.)

Thereafter, Plaintiff filed a Motion for Preliminary Injunction. (Dkt. 8.) Plaintiff requested that the Court return Defendant Domain Name to Plaintiff's possession by "directing the registry operator for the .COM registry, Verisign, Inc., which is located in this judicial district, to change the registrar of the TabelaFipeBrasil.com domain name to GoDaddy.com, LLC, and directing GoDaddy.com, LLC to change the registrant of the domain name back to [Plaintiff]." (*Id.* at 2.) The Court granted Plaintiff's motion, directing (1) Verisign, Inc. to change the registrar of Defendant Domain Name to GoDaddy.com, LLC; (2) GoDaddy.com, LLC to return the registration and control of Defendant Domain Name to Plaintiff; (3) Plaintiff to post a bond in the amount of $500.00; and (4) Plaintiff to provide a copy of the Court's Order to Verisign, Inc., GoDaddy.com, LLC, and the then-registrant via e-mail. (Dkt. 15.) The respective

parties complied and subsequently returned possession and control of Defendant Domain Name to Plaintiff. (Mem. Supp. at 6.) Plaintiff also posted a $500.00 bond on September 24, 2019. (Dkt. 20.)

After Defendant failed to appear or otherwise respond in this matter, Plaintiff requested the Clerk's entry of default on November 11, 2019 (Dkt. 22), and the Clerk entered default as to both defendants on November 12, 2019 (Dkt. 23). Plaintiff then filed the instant Motion (Dkt. 24) and the accompanying Memorandum in Support (Dkt. 25). Plaintiff moves for default judgment solely against Defendant Domain Name pursuant to the ACPA (Count I). (Mot. Default J. at 1; Mem. Supp. at 2.) After representatives for Defendant Domain name failed to appear or otherwise respond at the December 13 hearing (*see* Dkt. 27), the undersigned took this matter under advisement to issue this Report and Recommendation.

**B.     Jurisdiction and Venue**

Before the Court can render default judgment pursuant to the ACPA, it must have (1) subject-matter jurisdiction, (2) *in rem* jurisdiction, and (3) proper venue.

First, the undersigned finds that this Court has federal question subject-matter jurisdiction. Plaintiff brought this cause of action pursuant to the ACPA, a federal trademark statute. (*See* Compl. ¶¶ 50-54.) This Court therefore has original jurisdiction under 28 U.S.C. § 1331, 15 U.S.C. § 1121(a), and 28 U.S.C. § 1338(a).

Second, the undersigned finds that the Court has proper *in rem* jurisdiction over Defendant Domain Name pursuant to 15 U.S.C. § 1125(d)(2)(A)(ii). This subsection allows a plaintiff to file an *in rem* civil action against a domain name if the plaintiff is unable to (1) "obtain *in personam* jurisdiction over a person who would have been a defendant in a civil action"; or (2) find the person who would have been the defendant through due diligence. 15

3

U.S.C. § 1125(d)(2)(A)(ii)(I)-(II). Here, John Doe's identity has been concealed and his postal address is in Panama. (*See* Compl. ¶ 10, Ex. A; Mem. Supp. at 7.) And despite Plaintiff's due diligence—including sending notice of this lawsuit and his intent to proceed *in rem*, and publishing notice of this matter in *The Washington Times*—Plaintiff never found the person who would have been the defendant and therefore could not obtain *in personam* jurisdiction over him. (Compl. ¶ 10, Ex. A; Mem. Supp. at 7.) Therefore, this Court has proper *in rem* jurisdiction over Defendant Domain Name pursuant to the ACPA.

Lastly, Plaintiff filed this lawsuit in the proper venue. Under 15 U.S.C. § 1125(d)(2)(C)(i), the domain name's "situs" is in the judicial district where "the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(C)(i). Here, venue is proper because (1) the top-level domain registry operator for .COM domain names, Verisign, Inc., is located within the Eastern District of Virginia; and (2) Defendant Domain Name is a ".COM" domain name. (Compl. ¶¶ 14-15; Mem. Supp. at 8.)

### C.    Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting party has been properly served. Federal Rule of Civil Procedure 4(n)(1) allows a federal court to assert jurisdiction over property if a federal statute authorizes it. Fed. R. Civ. P. 4(n)(1). The Rule further provides that the defendant must be given notice of the lawsuit "as provided in the [federal] statute or by serving a summons under [Rule 4]." Fed. R. Civ. P. 4(n)(1). Under the ACPA, a plaintiff filing an *in rem* action must provide notice via service of process to the registrant of the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)(ii)-(B). If a plaintiff is unable to find or obtain *in personam* jurisdiction over the person who would have

been the defendant, then the plaintiff can effect service of process by (1) sending notice of the alleged violation and intent to proceed *in rem* to the registrant of the domain name at the postal or e-mail address provided to the registrar and (2) publishing notice as directed by the court. *Id.*

Here, Plaintiff has demonstrated proper service of process. Plaintiff filed a Motion for Order to Publish Notice of Action pursuant to the ACPA, Federal Rule of Civil Procedure 4(f)(3), and 28 U.S.C. § 1655. (*See* Dkts. 16-17.) The Court granted Plaintiff's motion on September 19, 2019 and ordered (1) Plaintiff to publish a copy of the Order in *The Washington Post* or *The Washington Times* once per week for six (6) consecutive weeks, starting within fourteen (14) days after entry of the Order; (2) Plaintiff to serve a copy of the Order and Complaint on Defendants and Verisign, Inc.; and (3) that a declaration be filed on Plaintiff's behalf no later than seven (7) days after completion of these steps, describing compliance with the Order. (Dkt. 19.) Further, the Order advised John Doe and Defendant Domain Name of the lawsuit, the nature of the lawsuit, Plaintiff's potential remedies, and how to timely respond. (*Id.*) Lastly, the Order stated that "the foregoing steps shall be deemed to constitute service of the Verified Complaint on, and notice of the pleading due date to, Defendants John Doe and Domain Name pursuant to the Federal Rules of Civil Procedure and 28 U.S.C. § 1655." (*Id.*)

On November 4, 2019, Plaintiff's counsel filed a declaration and supporting documentation pursuant to the Court's September 19 Order. (Dkt. 21.) Counsel's declaration demonstrates that Plaintiff complied with the Court's Order by publishing the Order in *The Washington Times* for the requisite time on September 24 and October 1, 8, 15, 22, and 29, 2019. (Dkt. 21 ¶ 4, Ex. A; Mem. Supp. at 6, 8.) Plaintiff's counsel also e-mailed the Court's Order to Defendant and Verisign, Inc. (*See* Dkt. 21 ¶¶ 5-6, Exs. B-C; Mem. Supp. at 8-9.) The undersigned finds that Plaintiff fulfilled the steps under the ACPA and this Court's Order to

properly effect service of process.

## II. FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts.

Plaintiff is an individual residing in Portugal. (Compl. ¶ 4.) As a software and website developer, Plaintiff purchased Defendant Domain Name in 2013 from an authorized reseller. (*Id.* ¶¶ 17-18.) Plaintiff maintained the domain name through a management account on a protected computer, where he restricted access to those who had his username and password. (*Id.* ¶ 38.) Plaintiff developed a website housed on Defendant Domain Name featuring information and data regarding automobile, motorcycle, and truck makes, models, features, and sales information, including a database with definitions of the vehicles and prices per month. (*Id.* ¶¶ 23-24.) Plaintiff put significant time and effort into developing the website and improving the user experience. (*See id.* ¶¶ 24, 27-28.) He developed "custom components" for the website's functionality and worked on increasing its utility on mobile devices. (*Id.*) Plaintiff also received revenue from Defendant Domain Name by utilizing Google Adsense. (*Id.* ¶¶ 26-28.) For approximately six (6) years, Plaintiff kept the website updated and it garnered significant internet traffic. (*See id.* ¶¶ 23, 25.)

In early 2019, Defendant Domain Name was improperly transferred from Plaintiff's domain registrar to another domain-name registrar. (*See id.* ¶ 5, Ex. A.) Plaintiff received notice from the registrar operating his domain-name management account that someone had changed the e-mail address for his account. (*Id.* ¶ 39.) When Plaintiff logged into his account, he learned that Defendant Domain Name had been transferred to another registrar, "Name Cheap Inc." (*Id.*) An unknown person—Defendant John Doe—gained unauthorized access to Plaintiff's password-

protected account and, without Plaintiff's consent, transferred control of the website away from Plaintiff. (*Id.* ¶ 6.) Plaintiff never received notification that the domain name was being transferred. (*Id.* ¶ 40.)

Plaintiff therefore alleges that Defendant John Doe "obtained unauthorized access to Plaintiff's domain registrar account and manipulated the computer records to obtain the transfer of [Defendant Domain Name] through a surreptitious manner intended to avoid detection, including preventing Plaintiff from receiving electronic communications seeking approval for the transfer . . . and obtaining unauthorized access to such electronic communications to approve the transfer." (Mem. Supp. at 5; Compl. ¶¶ 41-42.) Once John Doe transferred control of the domain name to himself, he also changed the registrant information and technical settings, thereby disabling Plaintiff's ability to control the domain and website. (Compl. ¶ 43.) John Doe then made an unauthorized copy of the website's source code, databases, and graphical user interfaces and used them without Plaintiff's authorization. (*Id.* ¶ 44.) In sum, Plaintiff was a victim of domain-name "theft" or "hijacking." (*Id.* ¶ 1.)

### III. EVALUATION OF THE PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). Consequently, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim

upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) (citations omitted).

### A.    Legal Standard

Generally, the ACPA provides for a party to be liable to a trademark owner if that party has a bad-faith intent to profit from the owner's mark and registers, traffics in, or uses a domain name that is identical, confusingly similar to, or dilutive of that mark. 15 U.S.C. § 1125(d)(1)(a); *see also Cent. Source LLC v. annualcreditreport.com*, No. 1:14-cv-304, 2014 WL 3811162, at *6 (E.D. Va. Aug. 1, 2014) (citing *People for the Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 367 (4th Cir. 2001)). Accordingly, the ACPA allows the owner of a mark to file an *in rem* action against a domain name if it violates the owner's trademark rights, and if the owner satisfies the procedural provisions outlined above. *See* 15 U.S.C. § 1125(d)(2)(A). In an *in rem* action, the remedies are limited to forfeiture, cancellation, or transfer of the infringing domain name to the owner of the mark. *Id.* § 1125(d)(2)(D).

To be entitled to relief, the plaintiff must prove a violation of "any right of the owner of a mark," which encompasses rights against cybersquatting under 15 U.S.C. § 1125(d)(1). *Id.* § 1125(d)(2)(A); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 228, 232 (4th Cir. 2002). The owner of a mark may therefore be entitled to *in rem* relief upon proving a violation of § 1125(d)(1), which creates civil liability for registering, trafficking in, or using a domain name that is "identical or confusingly similar" to a plaintiff's mark, with a bad-faith intent to profit from that mark. 15 U.S.C. § 1125(d)(1)(A). In sum, to establish such an ACPA violation, a plaintiff must establish: (1) its ownership of a valid and protectable mark; (2) the registrant's use of a domain name that is "identical or confusingly similar" to the plaintiff's mark; and (3) the registrant's bad-faith intent to profit from the mark. *See id.*

### 1.    Plaintiff Possesses a Valid and Protectable Mark

First, Plaintiff must first demonstrate that it has protectable rights in its marks. At common law, trademark ownership can be acquired "by actual use of the mark in a given market." *Emergency One, Inc. v. Am. Fire Eagle Engine Co.*, 332 F.3d 264, 267 (4th Cir. 2003). Furthermore, the use of the mark on a website or in a domain name may be sufficient to create common-law trademark rights if it "is used to identify the sources of goods and services." *See, e.g., Tober v. APROV.COM*, No. 1:07cv1252 (LMB/TCB), 2008 WL 4364221, at *2 (E.D. Va. Sept. 23, 2008) (citation omitted). As such, a plaintiff can establish common-law trademark rights by continuously using a domain name for promoting a business in commerce. *See, e.g., Chen v. Jun*, No. 1:18-cv-00794 (TSE/TCB), 2018 WL 6060471, at *3 (E.D. Va. Oct. 31, 2018). Further, a plaintiff's mark must be distinctive and famous at the time of the defendant domain name's registration. 15 U.S.C. § 1125(d)(1)(A)(ii).

Here, Plaintiff plead that he used the domain name in the United States and in international commerce to provide a website featuring information about automobile, motorcycle, and truck makes, models, features, and sales information. (Compl. ¶¶ 23, 31; Mem. Supp. at 10.) In other words, Plaintiff used Defendant Domain Name to promote his business of providing information to the public and to obtain revenue from advertisements on the website. (Compl. ¶¶ 23, 26, 28, 31; Mem. Supp. at 3, 11.) Therefore, Plaintiff's use of the domain name in U.S. and international commerce in association with these services entitles him to common-law trademark rights in the domain name. (Compl. ¶ 31; Mem. Supp. at 10-11.) Further, Plaintiff plead that the TabelaFipeBrasil.com mark was distinctive at the time John Doe transferred control of the domain name away from Plaintiff. (Compl. ¶¶ 23, 31; Mem. Supp. at 2.) For these reasons, the undersigned finds that Plaintiff possesses a valid and protectable mark.

### 2.    Defendant Domain Name Is Confusingly Similar to Plaintiff's Mark

Under the ACPA, Plaintiff must show that Defendant Domain Name is either identical, confusingly similar to, or dilutive of a distinctive mark owned by Plaintiff. 15 U.S.C. § 1125(d)(1)(A); *see Doughney*, 263 F.3d at 367. If Defendant Domain Name and Plaintiff's mark are virtually identical, then they are "confusingly similar" under the ACPA. *See Agri-Supply Co. v. Agrisupply.com*, 457 F. Supp. 2d 660, 664 (E.D. Va. 2006); *see also Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc.*, 43 F.3d 922, 936 (4th Cir. 1995) ("[I]n evaluating the similarity of two marks … the marks need only be sufficiently similar in appearance." (citation omitted)). Logically, this "confusingly similar" standard is satisfied when a domain name is identical to a plaintiff's mark. *See Agri-Supply*, 457 F. Supp. 2d at 663. Here, this standard is easily met. Defendant John Doe transferred control of Defendant Domain Name away from Plaintiff without his authorization. (Compl. ¶ 49.) Therefore, Defendant Domain Name is identical to Plaintiff's TabelaFipeBrasil.com mark and satisfies the ACPA standard as outlined above. (*See id.*)

### 3.    Defendant's Bad Faith

Lastly, the undersigned finds that Defendant acted in bad faith. Relevant factors for this determination include: (1) a defendant's intellectual property rights in the domain name; (2) the extent to which the name consists of the defendant's legal name; (3) a defendant's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; and (4) a defendant's provision of misleading or false contact information when applying for registration of the domain name. 15 U.S.C. §§ 1125(d)(1)(B)(i)(I)-(II), (IV), (VII). Courts may use these factors as a guide but are not required to exhaustively consider them. *Lamparello v. Falwell*, 420 F.3d 309, 319-20 (4th Cir. 2005).

10

Here, there are several indications of bad faith. As an initial matter, the undersigned finds that John Doe stole Defendant Domain Name from Plaintiff. Therefore, Defendant John Doe lacked any legitimate interest in the domain name and used Plaintiff's website to collect revenue that rightfully belonged to Plaintiff. This supports a finding of bad faith. *See, e.g.*, *Diginus BV v. 1001.com*, No. 1:19-cv-1089 (LO/JFA) (ECF No. 14) (E.D. Va. Nov. 18, 2019). Analyzing the relevant factors under the ACPA also supports such a finding. First, Defendant Domain Name does not reflect John Doe's intellectual property rights. (Compl. ¶ 46; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(I).) Second, Defendant Domain Name does not reflect John Doe's legal name. (Compl. ¶ 47; *see also* 15 U.S.C. § 1125(d)(1)(B)(II).) Third, John Doe never engaged in any bona-fide noncommercial or fair use of the trademark by using the website accessible under Defendant Domain Name. (Compl. ¶ 48; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(IV).) Rather, Defendant John Doe used Plaintiff's website to receive the advertising revenue Plaintiff would have otherwise received. (Compl. ¶¶ 26, 28, 48.) Lastly, the contact information for the John Doe registrant was entirely concealed. (Compl. ¶ 10, Ex. A; *see also* 15 U.S.C. § 1125(d)(1)(B)(i)(VII).) Upon review of the relevant factors and facts, undersigned concludes that Defendants acted in bad faith.

**B.    Conclusion**

Because Plaintiff has satisfied the substantive and procedural provisions of 15 U.S.C. § 1125(d), the Court may order the forfeiture or cancellation of Defendant Domain Name or transfer ownership of Defendant Domain Name to Plaintiff. *See* 15 U.S.C. § 1125(d)(1)(C), (2)(D)(i).

11

IV.  R̲E̲Q̲U̲E̲S̲T̲E̲D̲ ̲R̲E̲L̲I̲E̲F̲

In addition to requesting an order entering default judgment under the ACPA claim (Count I) against Defendant Domain Name, Plaintiff also requests the Court to (1) convert the September 13 preliminary injunction into a permanent injunction; (2) dismiss the remaining counts without prejudice upon entry of default judgment as to Count I, and (3) direct that the $500.00 bond Plaintiff posted as a security for the preliminary injunction be returned to Plaintiff. (Mot. Default J. at 1; Mem. Supp. at 1.) The Court will consider each requested form of relief in turn.

**A.    Permanent Injunction**

Because Defendant Domain Name is currently registered in Plaintiff's name pursuant to this Court's Order entering a preliminary injunction (Dkt. 15), Plaintiff merely seeks to convert that preliminary injunction into a permanent injunction, thereby maintaining his ownership, possession, and control of the domain name. (Mem. Supp. at 2, 15.) To obtain a permanent injunction in the Fourth Circuit, a plaintiff must show:

(1) that it has suffered an irreparable injury;
(2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;
(3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and
(4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)).

Here, the undersigned finds that permanent injunctive relief is appropriate. As for the first, third, and fourth elements, this Court already found that (1) Plaintiff suffered an irreparable injury, (2) the balance of the equities tilted in favor of granting injunctive relief, and (3) the public interest would not be disserved by injunctive relief when it entered the Order granting

12

Plaintiff's Motion for a Preliminary Injunction. (*See* Dkt. 15 (finding the criteria in *Winter v. National Resources Defense Council*, 555 U.S. 7, 20 (2008) satisfied).) The undersigned further finds that the remaining, second element—the inadequacy of a legal remedy—is satisfied here. Because Plaintiff has been unable to uncover the identity of Defendant John Doe and is therefore only seeking default judgment *in rem* pursuant to the ACPA, Plaintiff is unable to recover any compensatory damages that he may entitled to. Therefore, the Court is unable to grant legal, compensatory relief at this juncture, leaving injunctive relief as the only avenue available to remedy Plaintiff's harm. Accordingly, the undersigned recommends converting the preliminary injunction into a permanent injunction.

### B.      Dismissing the Remaining Counts Without Prejudice

As Plaintiff is seeking default judgment pursuant to the ACPA claim (Count I) only, Plaintiff seeks dismissal of the remaining counts without prejudice. Specifically, Plaintiff requests that Counts II, III, IV, V, and VI be dismissed. As the undersigned recommends entering default judgment pursuant to Count I, the undersigned also finds good cause to dismiss the remaining counts without prejudice. If Defendant John Doe's identity is revealed in the future, Plaintiff should retain the right to seek further relief pursuant to his other *in personam* claims.

### C.      Returning Plaintiff's Bond

Lastly, because Plaintiff requests the Court to convert the preliminary injunction into a permanent injunction, Plaintiff requests that the Court return the $500.00 bond that he paid in this matter after this Court's September 13 Order (Dkt. 15). As discussed above, the undersigned recommends that the Court convert the preliminary injunction into a permanent injunction. As such, the undersigned also finds it appropriate to order the return of Plaintiff's $500.00 bond.

## V. RECOMMENDATION

For the reasons stated above, the undersigned recommends that this Court enter default judgment against Defendant Domain Name. The undersigned further recommends that the Court (1) convert the September 13 preliminary injunction into a permanent injunction; (2) dismiss Counts II, III, IV, V, and VI of the Verified Complaint without prejudice; and (3) direct that the $500.00 bond posted in this matter be returned to Plaintiff.

## VI. NOTICE

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
Theresa Carroll Buchanan
United States Magistrate Judge

THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

January 24, 2020
Alexandria, Virginia

14